## Kline Estate

E. C. *Kirk Hall*, and *High, Swartz, Roberts and Seidel*, for accountant.

M. *Paul Smith, Aker, Grossman and Hollinger*, Joseph E. *Green, Jr.*, and *Grubb, Guest and Littleton*, for legatee and objector.

TAXIS, P. J., February 1, 1965. — Decedent died on September 13, 1963, leaving a will dated July 2, 1963, on which the present letters were granted.

At the time of his death, decedent was the holder of a demand note in the amount of $5,000 given by accountant on July 19, 1962, and entered as a judgment in the court of common pleas of this county. In the petition for adjudication, it is averred that the note was given to secure decedent's lifetime occupancy of premises 281 Linden Lane, Merion, Pa., which had been devised to accountant by her mother, who died July 8, 1962. It is further averred in the petition for adjudication that accountant executed and delivered the note pursuant to an agreement that decedent would provide in his will that if he died a resident of the aforesaid premises, the note would be forgiven. A will so providing was prepared and executed and is dated October 15, 1962. This will was revoked by the will ultimately admitted to probate. It is accountant's position that the probated will constitutes an unlawful breach of decedent's agreement to forgive her $5,000 indebtedness.

The residuary legatee contends that this court lacks jurisdiction to pass upon this judgment, because a common pleas judgment is conclusive when presented in the orphans' court: 2 Hunter O. C., Debts of Decedents §3(c). The court has jurisdiction to determine

that a bequest to a debtor of an indebtedness embodied in a judgment note is a specific legacy whereby the indebtedness is forgiven: McKean Estate, 159 Pa. Superior Ct. 409. Accordingly, where a testator promises to bequeath in his will an indebtedness embodied in a judgment note, the court has jurisdiction to enforce the promise. The court will not, therefore, attack the common pleas judgment, but will determine whether decedent has made an enforceable promise to forgive accountant the indebtedness contained in the judgment note which she executed on July 19, 1962.

It is well settled that one may enter into a valid contract to dispose by will of his property, real or personal, in a particular way, and that such will is irrevocable and the contract will be specifically enforced: Liggins Estate, 393 Pa. 500, 503.

Mutual promises made by the parties in the presence of a witness constitute an enforceable contract, and an agreement to make a will or to devise one's property to a particular person is binding and irrevocable when supported by what the law regards as valid consideration: Liggins Estate, supra, at page 505.

A claim based upon a contract made with a decedent to leave certain property by will must be proved, like any other claim made against a decedent's estate, by evidence which is clear, precise and convincing: Liggins Estate, supra.

The testimony of Gilbert P. High, Esq., is clear, precise and convincing, and is corroborated by decedent's will of October 15, 1962, wherein decedent provided, inter alia, the following:

". . . If at the time of my death my estate includes a note of Five Thousand Dollars ($5,000) given me by the said Eleanora L. Hancock, then I direct that such note be returned to her and that the indebtedness represented thereby be considered as fully paid and discharged. . . ."

Mr. High testified that on July 19, 1962, accountant and decedent came to his office for a conference occasioned by the death of accountant's mother, Cecilia Lake. Accountant was executrix and sole beneficiary under her mother's will.

Decedent had been quite friendly with accountant's parents and had lived at their home. After Mr. Lake's death, decedent received from Mrs. Lake a promissory note payable in the amount of $5,000 at her death. By a collateral document, Mrs. Lake stated that the note represented an amount owed decedent for money advanced and material supplied in the repair and improvement of her residence. By another collateral document, decedent acknowledged that the note was to be deemed cancelled and annulled, if he did not survive Mrs. Lake.

On July 19, 1962, decedent told Mr. High that the purpose of his arrangement with Mrs. Lake was to assure him of being able to reside in the Linden Lane premises as long as he would want until his death, and that he and accountant wished to perpetuate that arrangement. He suggested a similar note to be executed by accountant, in which case he would execute a will that the note would be forgiven if he had been allowed to live at the same residence. Accountant agreed to this arrangement.

Pursuant to the agreement, decedent executed the will of October 15, 1962, and accountant executed the note of July 19, 1962. Decedent later directed Mr. High to draft the probated will, which was duly executed. Mr. High testified that he drafted the probated will, recognizing that it was diametrically opposed to decedent's former agreement with accountant.

Finally, Mr. High testified that decedent lived at the Linden Lane premises continually until the time of his death.

The testimony of Mr. High, together with decedent's

will of October 15, 1962, is clear, precise and convincing evidence of an agreement by decedent to forgive accountant's indebtedness of $5,000, and the court will enforce the agreement.

The residuary legatee contends that decedent's promise to forgive accountant's indebtedness was not supported by consideration. The benefit running to decedent is well expressed by Mr. High's testimony that decedent wanted to be assured of being able to reside in the Linden Lane property as long as he would want until his death. Accountant promised this benefit to decedent, and secured the promise with her note. The benefit was, in fact, realized by decedent.

For the above reasons, accountant's indebtedness to decedent, represented by the judgment note, is forgiven. Power and authority are given to accountant to mark the judgment satisfied upon her payment of costs as judgment debtor. . . .

AND NOW, February 1, 1965, this adjudication is confirmed nisi.